# DEWS & SMITH, ADM'RS VS. CORNISH.

Where a debtor executes two deeds of trust to different trustees, to secure the payment of several debts, and the latter trust deed embraces all the property mentioned in the first, and also other property, a court of equity will not interfere to require the trustee in the second deed, to exhaust such other property, before resorting to that also embraced in the first deed, unless all the parties interested are before it—the grantor, trustees and beneficiaries.

Where it appears from the evidence [for which see opinion] that a deed of trust was executed and accepted in good faith for the purpose of securing the debts recited in it, a court of equity will not conclude that the deed was a fraudulent contrivance to hinder and delay creditors.

Where the bill contains a prayer for specific relief, and also a prayer for general relief, the complainant may have specific relief other than that prayed for, provided it be consistent with the case made by the bill; it is otherwise, however, if the bill ask for specific relief only.

*Appeal from the Circuit Court of Union county in Chancery.*

LYON, for the appellant.

J. H. CARLETON, for the appellee.

Mr. Justice COMPTON delivered the opinion of the Court.

This was a bill for injunction exhibited by William Cornish, against Hezekiah Dews & Roland B. Smith, as administrators of the estate of Hiram Smith, deceased, and others.

It is necessary to a clear understanding of the questions involved, that we should refer briefly to the pleadings in the cause, and the attitude of the parties upon the record.

The bill charges that John H. Cornish, in November, 1851, executed to the appellee (who was the complainant below) a deed of trust on certain lands and negro slaves, and the crop

OF THE STATE OF ARKANSAS          **333**

TERM, 1859.]          Dews & Smith adm'rs. vs. Cornish.

of cotton to be grown on the premises for the year 1852, to secure two several writings obligatory of the grantor to one Cyrus F. Sargent, and to save harmless the appellee, who had become personal security for the payment thereof; that the debts to Sargent were due and payable, the one on the 1st February, 1852, and the other on the 1st March, 1853: that the deed of trust contained a power of sale, by which, in the event the grantor should fail to pay the debts to Sargent at their maturity, the appellee was authorized and empowered to sell at public sale, all the property conveyed, or so much thereof as might be necessary to pay the indebtedness, or save the appellee harmless; that the said John H. Cornish had previously, to-wit:. on the 30th of September, 1850, executed to John L. Cornish, as trustee, a certain other deed of trust on all the property embraced in the deed of trust to the appellee, except the cotton crop of 1852, *Emily*, a negro infant, and an undivided interest (one-third) in Nancy, a negro woman, and *Pichon*, a negro boy, (Pichon being dead at the time of filing the bill,) to secure the debts of the grantor to sundry creditors therein mentioned, which was a subsisting incumbrance on the property at the time the deed of trust was executed to the appellee.

The bill also charges that subsequent to the registration of the deeds of trust, executions came to the hands of the sheriff, issued on judgments recovered at law, by the appellants against the said John H. Cornish, and one John H. Hines, which were levied on part of said negro slaves embraced in the deed of trust, to-wit: *Peter, John, Nancy, Frances, Emily* and *Daniel*, and that the sheriff, if not restrained, would proceed to sell them under the executions in violation of the rights of the appellee.

A decree *pro confesso* was regularly entered against some of the defendants, and the others answered, making their answer a cross-bill against the appellee, in which they charge that the deeds of assignment were made to hinder and delay creditors, and were fraudulent and void; that subsequent to the filing of the original bill, and while the executions were temporarily

enjoined, all the property mentioned in the deed of trust to John L. Cornish, was sold pursuant to the provisions thereof, and was knocked off at a great sacrifice, in consequence of a fraudulent agreement between the grantor and the appellee, the latter becoming the purchaser for the use of the former; that there was property mentioned in the deed of.trust to the appellee, and not embraced in that to John L. Cornish, and upon which the executions had not been levied, sufficient to satisfy the debts to Sargent, and that there was, therefore, no necessity for enjoining their executions.

The prayer of the cross-bill is, that the injunction be dissolved, and that the appellants have their debts with damage. The cause was heard at December term, 1854, and the Court being of opinion that the deeds were not made to hinder and delay creditors, and were not void, and denying relief to appellants upon their cross-bill, perpetually enjoined their executions.

Upon the state of pleadings here presented, the appellants, as we shall presently show, were entitled to no relief growing out of their cross-bill, leaving them, as a ground of defence, the single question whether the deed of trust to the appellee was made to defraud creditors.

We suppose the deed of trust to John L. Cornish was brought into the record by the appellee to show a prior subsisting incumbrance upon a large portion of the property, in order that the value of the property conveyed to the appellee might not appear to exceed the amount of the debts secured, to such an extent as to raise a presumption against the integrity of the deed; and it may be here remarked, that under the issue made by the pleadings, the deed to John L. Cornish, and the sale made pursuant to its provisions, cannot be considered, for any other purpose, than as evidence tending to establish the character of the deed to the appellee.

We have carefully considered the testimony, and the material facts established may be stated thus: the grantor and the appellee were brothers—the entire estate of the grantor, both real and personal, was under incumbrance, and, according to

the terms of the deed of assignment, he was in possession. At the beginning of the year, 1852, he was without the necessary supplies to support the negro slaves, and the means to defray other necessary expenses of the plantation while the crop was being made, to secure which the proceeds of the entire crop of cotton for that year was applied with the knowledge and consent of the appellee—the crop being a short one. The appellee was present at the sale of the grantor's property, made under the deed of trust to John L. Cornish, on the 31st May, 1853, and purchased all the property. The negroes were sold in families at the request of the grantor, the appellee having nothing to do with the mode of selling. They were knocked off to appellee at something less than their real value, according to the judgment of the witnesses.

These are the facts tending to impeach the deed to the appellee; and opposed to these are the following: The appellants admit that the debts recited in the deed to the appellee were genuine, and that the appellee was bound as security for their payment. The appellee denies, in his answer to the cross-bill, that there was any agreement, understanding or combination, between himself and the grantor, touching the sale of the negroes, or other property, made on the 31st May, 1853, and avers that he bid for the property openly, publicly, and in good faith, and purchased the same for his own use; in all which he is corroborated by the testimony of the grantor, whose deposition was taken by the appellants. The appellee and the grantor also state, the one in his answer, and the other in his deposition, that the deed of trust to the appellee was executed and accepted in good faith for the purpose of securing the debts recited in it, and not for the purpose of hindering or delaying the appellants, or any other creditors.

From this evidence, we must conclude that the deed was not a fraudulent contrivance.

But it is urged in argument that, for the payment of the debts to Sargent, the appellee should be required, in equity, to first exhaust the property embraced in the deed of trust to him for

that purpose, and not embraced in the deed to John L. Cornish. It may be said in response, that if the cross-bill had brought before the Court the proper parties, and had been so framed as to have the trusts executed and closed up for the benefit of the creditors thereby secured with the view of having any surplus that might be ascertained decreed to the appellants as judgment creditors, this proposition might be entertained. Such, however, seems not to have been the case. The parties interested in the administration of the trust, under the deed to John L. Cornish, were not before the Court, nor were those interested in the execution of the trust to the appellee, except the appellee himself. If the design of the cross-bill was, in any event, to close the trusts, as above indicated, then the grantor, trustees, and beneficiaries were necessary and proper parties. *Story Eq. Pl.*, sec. 207, *and authorities there cited*.

Nor did the cross-bill contain a specific prayer for the relief now insisted on in the argument, nor a general prayer, under which it could be granted. The prayer is an essential part of a bill in equity, and without it, no decree can be rendered in favor of the complainant. Where the bill contains, as usual, a prayer for specific relief, and also a prayer for general relief, the complainant may have specific relief other than that prayed for, provided it be consistent with the case made by the bill. But if the bill ask for specific relief only, the Court is confined in its action to the special prayer, and if the complainant be not entitled to the relief asked, none other can be granted.

The decree of the Court below must be affirmed with costs.

Absent, Mr. Justice RECTOR.